## In re HURLBUTT, HATCH & CO.

(Circuit Court of Appeals, Second Circuit. February 1, 1906.)

### No. 221.

BANKRUPTCY—LIQUIDATION OF CLAIM.

Evidence considered, and *held* not to sustain the contention of a claimant that certain stocks owned by him were converted by the bankrupts, and his claim for the value of the stocks, which remained in the bankrupts' hands, liquidated.

Appeal from the District Court of the United States for the Southern District of New York.

In Bankruptcy. On report of referee.

See 135 Fed. 504.

The following is the opinion of William Allen, referee, after hearing testimony for the purpose of liquidating claim of James M. Quigley:

"On the 12th day of July, 1904, James M. Quigley filed in the office of the undersigned a proof of debt in which he claims for conversion of certain securities the amount of $13,503.80 to be due him from the bankrupts. On the 4th day of April, 1905, objections were filed by the trustee to said claim, hearings were had upon due notice, and testimony taken for the purpose of liquidating said claim. On the 13th day of July, 1903, Hurlbutt, Hatch & Co. demanded from James M. Quigley additional margin for the aforesaid securities, under penalty of a sale at the market. On the morning of the 14th day of July, 1903, James M. Quigley called upon Hurlbutt, Hatch & Co., and an agreement was made for the transfer on that day of his entire account to H. I. Judson & Co. Hurlbutt, Hatch & Co., in accordance with this agreement, delivered to Judson & Co. the bulk of the securities, with the exception of the following: 800 shares T. O. & U. Pd.; 10 shares Peoria & Eastern Maine Bonds; 200 shares B. & O.—before 3 o'clock on the 14th day of July. H. I. Judson, the senior member of the firm of H. I. Judson & Co., when informed of the transaction, immediately instructed Mr. Saltonstall, the manager of the house, who had full charge of the aforesaid transaction, to refuse to receive the undelivered securities and criticised him for having entered into any such agreement; thereupon Mr. Saltonstall called up the office of Hurlbutt, Hatch & Co., and refused to receive the undelivered securities. It is claimed by Mr. Quigley that this refusal occurred about 5 or 10 minutes after 3 o'clock in the afternoon; as a matter of fact, the evidence shows that the refusal to receive the stock was made prior to 3 o'clock. H. I. Judson & Co. refused to receive the balance of said securities and thereby rendered it impossible for Hurlbutt, Hatch & Co. to carry out their contract; the securities undelivered were, on the 14th day of July, 1903, in their possession or subject to their control, and they were prepared to deliver them on that day, pursuant to their agreement. It must be remembered that about this time a panic existed in Wall street, and the evidence contains an admission of Mr. Judson that one of his reasons for refusing to receive the balance of the securities was the rapid decline in values, and it is only too apparent that this was the sole reason for stopping the delivery. Assuming that the bankrupts had agreed to deliver at 3 (which, as a matter of fact, they did not), and omitted to deliver the balance of the securities on or before the stroke of 3, and that they were able to deliver them within a reasonable time that day, there would have been only a breach of contract, and only nominal damages could be justified. The agreement, as a matter of fact, was to deliver during the day, and they were prevented from so doing by the refusal of Mr. Judson to accept delivery.

In my opinion, the contention of Mr. Quigley that these undelivered securities were converted is not borne out by the testimony. The testimony

shows that Hurlbutt, Hatch & Co. were at all times ready to deliver the securities and that the reason the. securities were not delivered was the refusal of Mr. Judson to accept the same, which refusal was occasioned by the decline in stocks heretofore mentioned. There being no conversion of the securities, the sum due Mr. Quigley should be liquidated, in accordance with the situation on the 5th day of April, 1903, the day on which the petition in bankruptcy was filed. On that day the situation was as follows: Mr. Quigley was indebted to Hurlbutt, Hatch & Co. in the sum of $7,090.62; that being the balance remaining after crediting him with intermediate sales. Against this indebtedness the bankrupts hold 100 shares T. O. & U. Pd., and 10 shares Peoria Bonds; the value of the 100 shares T. O. & U. Pd. on August 5th, 1903, was $2,600, and the value of the 10 shares Peoria Bonds $5,800, in all $8,400. There was therefore a surplus in favor of Mr. Quigley amounting to $1,309.38; there was also $800 extra coupons on the Peoria Bonds. The total balance in his favor on the date of the bankruptcy was, therefore, $2,-109.38.

I therefore find that the claim herein should be liquidated at the sum of $2,109.38; that upon a surrender. of the securities held by the claimant he should be allowed to participate in the dividends hereafter to be declared, and that in the event of his failure to surrender such securities he shall be entitled to participate in such dividends to the extent of any deficiency that may result after exhausting his securities.

Let an order be entered herein pursuant to the above opinion."

The following is the opinion of Adams, District Judge, on the proceeding to review the order of the referee in bankruptcy:

This is a proceeding to review an order of the Referee in bankruptcy, who has liquidated a claim of James M. Quigley in the sum of $2,109.38, disallowing the remainder of the claim of $13,503.80, on various shares of the claimant's stock, described as follows: 800 shares T. O. U. preferred, 200 B. &. O., and 10 Income Bonds of the Peoria & Eastern Railroad Company. It is alleged by the claimant that the securities were converted. by the bankrupts and that the damages allowed are entirely insufficient to recompense the claimant for the injury that he has sustained. The Referee, after a full consideration of the testimony, has held that there was no conversion but that the securities were duly on hand and ready for delivery, and that on this day a panic existed in Wall street, causing a rapid decline in the values of stocks, and it was for such reason that the firm of H. I. Judson & Company, then representing the claimant, refused to receive these stocks, which were the remainder of a large quantity being carried for Quigley by the bankrupts, the others having been turned over by the latter during the day, after an adjustment of accounts relating to them. Having determined that there had been no conversion, the Referee proceeded to liquidate the claimant's account, with the above result.

The matter has been very elaborately argued by the parties, on the hearing and in briefs, and many points have been raised by the claimant, but it does not seem necessary to consider them in detail, as I am satisfied that a just result has been reached. The gist of the Referee's decision is found in the latter part of his order, which correctly, it seems to me, determines the question of conversion.

The report is confirmed. The claimant's motion to strike out a portion of the Referee's order, based on the order obtained from me July 24, 1905, relating to the statement with reference to liquidating Quigley's claim, is denied. The eight questions certified by the Referee are answered in the negative.

G. R. Roe, for appellant.

B. N. Cardozo, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. Order affirmed upon opinions of the referee and district judge.